273 So.2d 645 (1973)
Earl J. REVOLTA
v.
ALLSTATE INSURANCE COMPANY.
No. 5212.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 1973.
*646 Steven R. Plotkin, David Gertler, New Orleans, for plaintiff-appellant.
Porteous, Toledano, Hainkel & Johnson, John J. Hainkel, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, STOULIG, and BAILES, JJ.
BAILES, Judge.
Plaintiff brought this action against Allstate Insurance Company to recover damages sustained in a vehicular collision between his and another automobile owned by Earl R. Harper, driven by Mitchell Smith, a 16 year old youth, and insured with public liability coverage by defendant.
In his petition, plaintiff alleges that at the time of the accident Mitchell Smith was driving the car with the owner's permission. Subsequent to the filing of the answer in which it denied that Mitchell Smith was operating the vehicle with the permission of Mr. Harper, defendant filed a motion for summary judgment alleging that there is no conflict as to any material fact relative to permission, or the lack of permission, of Earl Harper for Smith to drive his vehicle.
After hearing on the motion, the trial court granted summary judgment dismissing plaintiff's suit. While the record contains no written reasons for judgment, the court must have found that Smith was operating the Harper vehicle without the owner's permission, the effect of which finding is that the driver had no coverage under the omnibus clause of the insurance contract. Under the alleged facts no action could be maintained against defendant save and except under the provisions of the omnibus clause. We concur in the finding of the trial court and do affirm the judgment.
In support of the motion for summary judgment, the defendant produced the affidavit of Earl R. Harper, which in essence affirmatively asserted that on or about November 28, 1970, he took his automobile and some clothing to a combination car wash and laundry at the intersection of *647 Haynes Boulevard and Downman Road in the city of New Orleans; that an unidentified negro male sought permission to take his automobile through the automatic wash bay, to dry and vacuum clean it in consideration of a tip (as stated in a subsequent deposition); that he permitted the unidentified person to perform this service; that he went to the laundry while this service was being performed, and upon his return approximately ten minutes later to the car wash area of the premises an unidentified female, who identified herself as the sister of the boy who was to wash his car, told him that her brother had taken the car to find a vacuum cleaner to clean the inside of the car; that he at no time advised the unidentified negro male to take the car off the premises or to operate his car other than to wash and dry it.
The plaintiff, in opposition to the motion, offered the depositions of Mitchell Smith, the unidentified negro male referred to in Harper's affidavit, and Earl R. Harper.
From these two depositions we find the following facts:
That on occasions Mr. Harper patronized a combination car wash and cleaners and laundry jointly operated in a building located at the intersection of Downman Road and Haynes Boulevard in the city of New Orleans.
On November 28, 1970, the date of the accident which gave rise to this law suit, when Mr. Harper drove up to the car wash Mitchell Smith came to the car and asked if he could wash and clean the car, as he had done on one previous occasion. Mr. Harper told him he could whereupon Smith got in the car and drove it into the washer. Mr. Harper testified that he stood there for a short time and then went into the laundry either to pick up or to wash some clothes.
After young Smith had completed the washing and vacuum cleaning of the car, and Mr. Harper had not returned to the car, he decided he was going to take the car for a pleasure ride. After leaving the premises he stated he then decided to drive to his home in the Seventh Ward so he could prove to his mother that he could drive a car. According to his testimony his mother had promised to give her permission for him to obtain a driver's license when he convinced her he could drive. In returning to the car wash from his home he collided with the plaintiff's vehicle inflicting the damage herein sought to be recovered.
Although on one occasion Mitchell Smith stated that the vacuum cleaner at the car wash did not work and for that reason he drove to a nearby car wash to use the vacuum cleaner, we are not impressed with this testimony.
On three occasions in his deposition, Mitchell Smith testified that he had finished vacuuming the car before he left the premises. At four different times he testified that he drove the car to another car wash to vacuum it, and on as many occasions he testified that he knew he did not have permission to drive the car off the premises.
Shortly after Mitchell Smith drove away, Mr. Harper returned to the car wash portion of the premises whereupon he found his car missing. It was at this time that the Smith boy's sister who was on the premises told Mr. Harper that Mitchell had gone to a nearby washer to use the vacuum cleaner. Upon stating that he was going to call the police, the lady who operated the laundry prevailed on him to let her take him in her car to search for his car. Being unable to locate his car at either of two nearby car washers, Mr. Harper returned to the laundry where he called the police to report that his car was stolen. Shortly after the police arrived, Mitchell Smith returned to the car wash with the Harper automobile.
*648 The Plaintiff argues:
1. That the driver of the Harper vehicle had the express or implied permission of the owner to drive this vehicle, and accordingly, the omnibus clause of the defendant's policy provides coverage for the damages;
2. That Harper was negligent in leaving his automobile in charge of an unlicensed minor, and therefore is covered under the policy of defendant who is liable to plaintiff for the resulting accident and damages; and
3. That there is present serious questions of fact and therefore the granting of a summary judgment is improper and deprives plaintiff of his day in court.
We shall consider now the issues raised in plaintiff's brief.
C.C.P. Article 966, states in part:
"The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
It is a well established principle of law that a motion for summary judgment is not a substitute for trial and may not be resorted to when there is a genuine issue of material fact which must be resolved in order to entitle the mover to a judgment as a matter of law. In passing upon the motion for summary judgment, the court's function is not to determine the merits of the issue raised, but, rather, to determine only whether there is a genuine issue of material fact. See Latter & Blum, Inc. v. Von Ruekfrang, La.App., 249 So.2d 229 (1971).
In consideration of the testimony of Mitchell Smith and Earl R. Harper it is clear that Mr. Harper gave no express permission to Smith to use his vehicle as Smith was not an employee of the car wash and performed work on patrons' cars for whatever remuneration he could receive in the form of tips; and was permitted by Mr. Harper, as he had been on one previous occasion, to drive the car through the wash bay and onto the adjacent apron area for the purpose of drying and vacuum cleaning the interior, we cannot construe this engagement to grant implied permission to an individual whose name was unknown to the owner, the right to operate the car off the premises or to engage in a pleasure ride.
The testimony of Mitchell Smith clearly establishes that he knew he had no such permission; that he left the premises of the car wash with the intention of driving to his home to exhibit to his mother his driving ability, and that he was hastening to return before Mr. Harper discovered that his car had been taken from the premises.
Plaintiff argues that the courts of this state have repeatedly construed the word "permission" in the omnibus clause in its broadest possible sense; and once permission, either express or implied to use an automobile is established, it is given a wide and liberal meaning in determining coverage. Supportive of this position, plaintiff cites a number of cases. We have examined and compared all of the cases cited, however, we find none apposite to the instant case.
Plaintiff cites the case of Scoggins v. Agricultural Insurance Company, La.App., 161 So.2d 438 (1964), as supportive of his theory of liability. We find the contrary. In that case the owner of the vehicle involved in an accident left it at a body shop *649 for the purpose of having certain body repair done. While at the shop for this purpose the car was driven on the street for the personal use of the driver. This court found there was no express permission given by the owner, and in regard to implied permission, stated:
"* * * the fact that plaintiff left the car at Aubry's Body and Fender Shop with the knowledge and understanding that in the progress of making the repairs and painting the car it would probably be necessary for the car to be shifted about in the shop. Certainly Lee had implied permission to do this. But neither Lee nor anyone else had Gibbs' permission either express or implied to take the car out of the shop and to drive it on the public streets on a personal mission, and it cannot be said that such an action constituted a deviation from the implied permission granted to shift the car within the confines of the shop. Aubry's driving out onto the streets had no origin in, or connection with, any shifting of the car about the shop."
Also see Frazier v. Jackson, La.App., 231 So.2d 629 (1970).
Our appreciation of plaintiff's argument is that he is seeking to have the court find that Harper had given the Smith youth permission to use his automobile, such finding to be based on the authority which he had to operate the car through the wash bay and onto an apron where the drying and vacuum cleaning work was to be done. Under a finding such as advocated by plaintiff it would be unnecessary to determine whether the driver was operating within the limits of the permission at the time he struck plaintiff's vehicle. A deviation from the initial permission being immaterial, and such permission may be either express or implied from the circumstances.
We cannot adopt the plaintiff's argument for application to the facts of the instant case.
Addressing ourselves now to the argument of the plaintiff that the defendant is liable because "the owner entrusted an automobile and keys thereto to a sixteen year old unlicensed minor," we find that the premise on which plaintiff bases his argument is not factually correct, for the reasons stated supra.
Plaintiff has cited cases which he contends supports his argument that Harper was negligent in entrusting his vehicle to this minor. We have examined all of these cases and find them inapposite to the instant case. Especially, plaintiff argues the applicability of Toole v. Morris-Webb Motor Company, La.App., 180 So. 431 (1938). Again, we find the premise of his argument not congruous with the facts. Plaintiff argues that Harper "gave the unlicensed minor possession of the car and the keys to the car, which in fact facilitated its operation and enabled the incompetent to drive the car."
We find no negligence on the part of Earl R. Harper in permitting Mitchell Smith to drive his car through the wash bay and then to the apron for drying and vacuum cleaning, and further, no liability on the part of the defendant for Smith's negligent operation of the vehicle.
For these reasons, the judgment appealed from is affirmed at plaintiff's cost.
Affirmed.